## LANDAFF *vs.* ATKINSON.

Where the settlement of a pauper is derived by descent from his father, evidence of the father's marriage is essential; but where the descent is shewn, slight evidences, such as the reputed marriage of the parents, even from the pauper himself, is sufficient *prima facie* evidence of the fact.

Where the descent was admitted, and no exception was taken as to the legitimacy of the children, on trial, *held* that the exception could not afterwards be taken.

The common law as to derivative settlements prevailed here prior to 1796, though not until that time incoporated into our statues.

A settlement once gained is not lost but by gaining a legal settlement in some other town within the state; such settlement is not effected by a settlement gained *in another state*, and the right of settlement may be *transmitted* to children born in such other state, so as to avail to them on their return within the state when a settlement *had been previously* acquired by the father.

THIS was assumpsit, for the support of Moses French, Clarissa his wife, and their two children Stephen and Elvira.

The case was tried on the general issue, and a verdict was taken, by consent, for the plaintiff, subject to the opinion of the court upon the following case.

The pauper, Moses French, if he had a settlement in Atkinson, derived it from Thomas French, his father, who testified that, according to his best knowledge and belief, he,

the witness, was born in said Atkinson, in the year 1758, which was at that time a part of Plaistow ; that *his* father lived in that part of Plaistow which is now Atkinson, on what was called Newbury-hill, and that, when the witness was twenty-four years old, which was in 1782, he went to the state of Vermont and lived there upwards of thirty years, where the pauper was born about the year 1796 ; that the witness then, in 1812, or soon after that time, returned to the state of New-Hampshire, where he has ever since resided.

It was admitted that the pauper never gained a settlement in his own right.

It was agreed that judgment might be rendered upon the foregoing case as the court should direct.

*Bell*, for the defendant, contended—

1. That the pauper had no settlement in his own right, and that it did not appear from the case that the father was ever married ; and without such evidence no *derivative* settlement could be shown ; that the pauper's father removed from the state in 1782, and the statute in force at that time gave no settlement *except by residence.*

2. That the proviso in the act of January 1, 1796, (*Laws N. H.* 363, *ed.* 1815) would save to the *father* the settlement he had in 1782; that the father never gained any settlement after 1796 ; and that prior to that act he held his settlement as a *personal right* only, and therefore could give no derivative settlement.

3. The father gained a settlement in the state of Vermont, and had no occasion to hold his settlement in New-Hampshire, or to communicate it. In order to communicate a settlement within this state, he must be a citizen of the state at the time of the birth of his children ; but the father's right was at that time suspended, and he could not communicate a settlement within the state of New-Hampshire.

*Goodall & Woods*, for the plaintiff.

UPHAM, J., delivered the opinion of the court.

In this case it is objected, that the evidence was not sufficient to justify rendering a verdict in favor of the plaintiff, for the reason that no evidence was offered that the pauper was the legitimate child of Thomas French, the father. Had this proof been required at the trial, it would have been essential.

The marriage, and that the pauper is the issue of the marriage, must be proved; but when the actual descent is proved, very slight evidence will be sufficient in the first instance to establish the legitimacy. 17 *Vin. Ab. Presumption, a;* 14 *Pet. Ab.* 443, *note.* As Thomas French was admitted to be the father of the pauper in the case, and no exception was taken on the trial as to the legitimacy of the son, it must be regarded as conceded, until the contrary appears. It is too late now to take the exception.

It is also contended that prior to the act of January 1, 1796, there was no law here relative to derivative settlements, and that the settlements of children gained before that time were obtained solely in their own right.

By the act of 1796, it is provided, " That legitimate 'children shall have the settlement of their father, if he 'shall have any such within this state, until they gain a set-'tlement of their own." *Laws N. H.* 362, *ed.* 1815. This act fixes the settlement of children born both prior and subsequent to the passing of the act, as dependant on their father, unless they had previously gained a settlement of their own. But were it not so, it is believed the doctrine of derivative settlements prevailed here long prior to the act of 1796, as part of the common law, or in accordance to the provisions of English statutes, which had been adopted or practiced upon here, and that this pauper had the settlement of his father, unless other cause to the contrary can be shown.

A farther objection taken is, that, while the father was without the state his residence was suspended, so that

during such period he could not communicate a settlement to his children. Were the settlement suspended it would, perhaps, be attended with this effect; but we do not conceive the settlement to be suspended. The individual is placed merely under such circumstances that he and his children born to him without the state cannot enforce a claim for support while absent. The fact of their settlement is in no way altered by their absence, or any consequences arising from it, except the want of means to enforce their claim. The right exists, not as a question of jurisdiction but is a mere fact of descent, and avails to the pauper and his children on their return to the state, precisely as though they had never left it.

This doctrine is sustained by authorities. It has been uniformly held that a settlement once gained is not lost but by gaining a legal settlement in some other town in the state, 4 *Mass.* 131, *Chelsea* vs. *Malden;* and that such settlement is not effected by any residence or actual settlement gained in another state. 11 *Mass.* 441, *Canton* vs. *Bentley;* 2 *N. H. R.* 131, *Hanover* vs. *Weare.*

And the point now in issue was expressly decided, on full consideration, in the case of *Townsend* vs. *Billerica,* 10 *Mass.* 411. It was there held, that where a pauper, having a settlement derived from his father, removed into another state, and had there a son born, who afterwards came within the state to reside, and had children, that these children had a settlement in the state, derived from their great-grandfather. The court remark that, though the father of these children might have gained a settlement by his birth in another state, this would have no effect upon his settlement derived from his father's legal settlement in Massachusetts, which continued to him notwithstanding his removal from the state. The doctrine, therefore, that such settlement was suspended, or that the right of settlement under such circumstances was not transmissible, was expressly overruled.

Cases of attainder in England would seem to suspend a right of settlement far more than a removal with us to another state; but it is holden there that though the party attainted, cannot acquire a new settlement himself, he may communicate a settlement to his children born after the attainder. 6 *D. & E.* 116, *Rex* vs. *St. Mary's Cardegan;* 15 *East.* 463, *Rex* vs. *Haddenham.*

We are of opinion that the several objections taken must be overruled, and that there must be

*Judgment on the verdict for the plaintiff.*